IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| CESAR YAPIAS ZEVALLOS and EFRAIN PEREZ ARIAS,<br><br>                Plaintiffs,<br><br>v.<br><br>PETE STAMATAKIS and MOUNTAIN PLAINS AGRICULTURAL SERVICE,<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER DENYING DEFENDANT MOUNTAIN PLAINS AGRICULTURAL SERVICE'S MOTION TO DISMISS**<br><br>Case No. 2:17-cv-00253-DN<br><br>District Judge David Nuffer |

Defendant Mountain Plains Agricultural Service ("MPAS") filed a Motion to Dismiss[1] arguing that Plaintiffs failed to plead sufficient facts in their Complaint[2] to state claims for violations of the Fair Labor Standards Act ("FLSA") and the Trafficking Victims Protection Reauthorization Act ("TVPRA"); breach of contract; quantum meruit; intentional infliction of emotion distress; and negligent infliction of emotional distress. Because Plaintiffs allege sufficient facts to state plausible claims for relief, MPAS's Motion to Dismiss[3] is DENIED.

---

[1] Motion to Dismiss Defendant Mountain Plains Agricultural Service ("Motion to Dismiss"), docket no. 22, filed July 17, 2017.

[2] Docket no. 5, filed Apr. 6, 2017.

[3] Docket no. 22, filed July 17, 2017.

**Table of Contents**

STANDARD OF REVIEW ........................................................................................ 2
BACKGROUND ...................................................................................................... 3
DISCUSSION .......................................................................................................... 5
    Plaintiffs allege sufficient facts to state a plausible FLSA claim ...................... 5
        *MPAS had power to hire and fire Plaintiffs*.......................................... 9
        *MPAS controlled Plaintiffs' conditions of employment*......................... 10
        *MPAS determined Plaintiffs' rate and method of payment* .................. 10
        *Plaintiffs lack of allegations that MPAS maintained their employment records is inconsequential* .............................................................................. 11
    Plaintiffs allege sufficient facts to state a plausible TVPRA claim .................. 12
    Plaintiffs allege sufficient facts to state a plausible claim for breach of contract............ 15
    Plaintiffs allege sufficient facts to state a plausible claim for quantum meruit ............... 16
    Plaintiffs allege sufficient facts to state a plausible claim for intentional infliction of emotional distress............................................................................. 18
    Plaintiffs allege sufficient facts to state a plausible claim for negligent infliction of emotional distress............................................................................. 20
ORDER ................................................................................................................. 21

**STANDARD OF REVIEW**

A defendant is entitled to dismissal under Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim for which relief may be granted.[4] When considering a motion to dismiss for failure to state a claim, the thrust of all well-pleaded facts in the complaint is presumed.[5] "[C]ourts may [also] consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference."[6] And courts will "liberally construe the pleadings and make all reasonable inferences in favor of the [plaintiff]."[7]

The Supreme Court has held that satisfying the basic pleading requirements of the federal rules "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A

---

[4] *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).

[5] *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009).

[6] *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

[7] *Broker's Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017).

pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."[8] "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief."[9] "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them."[10]

## BACKGROUND[11]

In 2013, Plaintiffs came to the United States from Peru to work as sheepherders on a Utah ranch operated by Defendant Pete Stamatakis.[12] Plaintiffs were able to work in the United States because MPAS and Mr. Stamatakis applied for and procured visas for them as part of the H-2A program for foreign workers.[13] The H-2A program allows employers to bring foreign nationals to the United States to fill temporary agricultural jobs.[14] To participate, employers are required to certify to the Secretary of Labor that "there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed to perform the labor or services involved[.]"[15] Employers must also certify that they will abide by Department of Labor ("DOL") regulations and meet applicable housing standards, wage rates, and transportations costs.[16]

---

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted).

[9] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008).

[10] *Id.* at 1248.

[11] This statement of facts is based, as is appropriate, on the allegations of the Complaint.

[12] Complaint ¶¶ 1, 27-29.

[13] *Id.* ¶ 16.

[14] 29 C.F.R. § 501.1.

[15] 8 U.S.C. § 1188(a)(1)(A).

[16] 20 C.F.R. § 655.122.

In exchange for working as sheepherders, Plaintiffs were to be paid a rate of $750 per month from 2013 to 2015 plus room and board, and a rate of $1,206.31 per month in 2016 plus room and board.[17] MPAS filled out a Job Order, which established the terms of Plaintiffs' employment, set the period of employment, and stated the employer would abide by DOL regulations.[18] Plaintiffs agreed to those terms and came to the United States to work.[19]

Plaintiffs allege that after they arrived and began working on Mr. Stamatakis's ranch, it became clear Defendants were not abiding by the terms stated in the Job Order. Specifically, Plaintiffs allege their housing was inadequate,[20] they were not paid their contracted wages,[21] they did not have sufficient food and drink,[22] were verbally abused,[23] were refused medical care,[24] spent more than half of their time doing non-sheepherding work,[25] and more. Plaintiffs also allege Mr. Stamatakis confiscated their legal documents (passports, visas, and visa renewals forms) and refused to give them back.[26] Plaintiffs further allege MPAS refused to help them when Plaintiffs informed MPAS of Mr. Stamatakis's conduct, thereby working with Mr. Stamatakis to coerce Plaintiffs into continued work at the ranch.[27]

In 2016, Plaintiffs left the ranch. They filed this case on April 6, 2017, alleging claims against MPAS and Mr. Stamatakis for violations of the FLSA and the TVPRA, breach of

---

[17] Complaint ¶ 15.

[18] Agricultural and Food Processing Clearance Order ETA Form 790 ("Job Order"), attached to Complaint at 23-29.

[19] Complaint ¶¶ 28-29.

[20] Id. ¶¶ 40-41, 64-67.

[21] Id. ¶ 42.

[22] Id. ¶¶ 58-63

[23] Id. ¶¶ 69-70.

[24] Id. ¶ 68.

[25] Id. ¶¶ 35-39.

[26] Id. ¶¶ 43, 46-53.

[27] Id. ¶¶ 51-52, 56-57.

contract, quantum meruit, intentional infliction of emotional distress, and negligent infliction of emotional distress.[28]

MPAS seeks dismissal of Plaintiffs' claims arguing that Plaintiffs failed to state a claim on which relief may be granted.[29]

## DISCUSSION

Measured against the applicable legal standard, Plaintiffs allege sufficient facts to state plausible claims against MPAS for violations of the FLSA and the TVPRA, breach of contract, quantum meruit, intentional infliction of emotion distress, and negligent infliction of emotional distress. Each claim will be addressed in turn.

### Plaintiffs allege sufficient facts to state a plausible FLSA claim

The FLSA requires employers to pay a minimum wage to employees, who are "employed in an enterprise engaged in commerce."[30] "Any employer who violates [this] provision[] . . . shall be liable to the employee or employees affected in the amount of their unpaid minimum wages . . . and in an additional equal amount as liquidated damages."[31] And [a]n action to recover the liability prescribed . . . may be maintained against any employer[.]"[32] In order to recover under the FLSA, a plaintiff, whose work involved some kind of interstate commerce, must allege that an employer failed to pay minimum wages.[33]

---

[28] *Id.* ¶¶ 83-110.

[29] Motion to Dismiss.

[30] 29 U.S.C. § 206(a).

[31] *Id*. § 216(b).

[32] *Id.*

[33] *Id*. §§ 206(a), 216(b).

MPAS argues Plaintiffs fail to allege sufficient facts to show that MPAS was Plaintiffs' employer.[34] MPAS maintains it was merely an agent of Mr. Stamatakis, and simply submitted H-2A visa application forms on his behalf.[35]

The FLSA broadly defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee[.]"[36] The federal regulations which implement the FLSA state that an employee can be "employed jointly by two or more employers" and that "all joint employers are responsible, both individually and jointly, for compliance with [the FLSA]."[37] The regulation further states that "[w]here the employee performs work which simultaneously benefits two or more employers . . . a joint employment relationship generally will be considered to exist in situations such as . . . [w]here one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee[.]"[38]

The Tenth Circuit has not articulated a test for determining whether individuals or entities are joint employers under the FLSA. MPAS argues that because the Tenth Circuit has used an "economic realities" test in similar situations,[39] Plaintiffs' claim should be examined using the economic realities test developed by the Ninth Circuit in *Bonnette v. Cal. Health and Welfare Agency*.[40] The Ninth Circuit test looks at whether an alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained

---

[34] Motion to Dismiss at 5.

[35] *Id.* at 7.

[36] 29 U.S.C. § 203(d).

[37] 29 C.F.R. § 791.2(a) (1961).

[38] *Id.* § 791.2(b).

[39] *Johnson v. Unified Gov't of Wyandotte Cty./Kan. City, Kan.*, 371 F.3d 723 (10th Cir. 2004) (applying an economic realities test to determine whether plaintiffs were employees of defendant.

[40] Motion to Dismiss at 8.

employment records."[41] Under this test, the existence of a joint employer relationship does "not depend on isolated factors but rather upon the circumstances of the whole activity."[42]

In contrast, Plaintiffs urge the use of a more favorable test established by the Fourth Circuit, which focuses on the relationship between the "putative joint employers," rather than the relationship between the "employee and putative joint employer."[43] The Fourth Circuit identified six non-exhaustive factors to consider in determining whether a joint employment relationship exists:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the ability to direct, control, or supervise the worker, whether by direct or indirect means;
>
> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;
>
> (3) The degree of permanency and duration of the relationship between the putative joint employers;
>
> (4) Whether through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;
>
> (5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and
>
> (6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers'

---

[41] *Bonnette v. Cal. Health and Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983).

[42] *Id.* at 1469.

[43] *Hall v. DIRECTV, LLC*, 846 F.3d 757, 769 (4th Cir. 2017) (criticizing the *Bonnette* Court's reliance on "common-law agency principles [which] ignore Congress's intent to ensure that the FLSA protects workers whose employment arrangements do not conform to the bounds of common-law agency relationships.").

compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.[44]

"Further, because the status of a particular employment relationship is highly fact-dependent, . . . the absence of a single factor—or even a majority of factors—is not determinative of whether joint employment does or does not exist."[45]

The Fourth Circuit also stated that when "plaintiffs have had no opportunity for discovery as to payroll and taxation documents, disciplinary records, internal corporate communications, or leadership and ownership structures[,]" they need not plead facts to show a joint employer relationship under all the factors.[46] One factor alone "can give rise to a reasonable inference" that a joint employer relationship exists.[47]

Plaintiffs allege MPAS had a unified business operation with Mr. Stamatakis to recruit and hire temporary foreign workers under the H-2A program.[48] Plaintiffs also allege "MPAS sets many of the terms of the sheepherders' employment," and "plays an integral role in recruiting and initiating H-2A sheepherders' employment[.]"[49] Taking these and the other factual allegations in the Complaint as true, Plaintiffs have sufficiently alleged that MPAS and Mr. Stamatakis were joint employers under the broad Fourth Circuit test. Nevertheless, because Plaintiffs have sufficiently alleged that MPAS was a joint employer under either test, Plaintiffs'

---

[44] *Id.* at 769–70. The Fourth Circuit's factors closely mirror those established by the Department of Labor to help define employment relationships in the context of migrant and seasonal agricultural workers. 29 C.F.R. § 500.20(h)(5)(iv)(A)-(G).

[45] *Id.*

[46] *Id.* at 771 (citing *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961 (8th Cir. 2015) (holding that, at the pleading stage, plaintiffs relying on a joint employer theory are "not required to determine conclusively which [defendant] was their employer ... or describe in detail the employer's corporate structure").

[47] *Id.*

[48] Complaint ¶ 20.

[49] *Id.* ¶¶ 18-19.

claims will be analyzed using the narrower Ninth Circuit test for purposes of this Memorandum Decision and Order.

***MPAS had power to hire and fire Plaintiffs***

According to the Ninth Circuit in *Bonnette*, one factor to consider when determining if a joint employer relationship exists is whether MPAS had the power to hire and fire Plaintiffs.[50]

Plaintiffs do not expressly allege MPAS had the power to hire and fire them. However, Plaintiffs allege MPAS "plays an integral role in recruiting and initiating H-2A sheepherders' employment with its member ranches[,]" including Mr. Stamatakis's ranch.[51] Plaintiffs also allege MPAS "sets many of the terms of the sheepherders' employment with the member ranch."[52] Plaintiffs further allege MPAS and Mr. Stamatakis "filed H-2A visa applications as joint employers each year from 2011-2016 in order to employ temporary foreign workers under the H-2A visa program to work as sheepherders."[53]

Moreover, the Job Order attached to Plaintiff's Complaint provides that applicants were to apply directly to MPAS, and that MPAS would conduct applicant interviews, screen applicants, and check applicant references.[54] The Job Order also provides the anticipated length of Plaintiffs' employment, and that "[t]ermination may be carried out by the employer, and/or the employer's agent[.]"[55] MPAS itself argues it was an "employer agent" for the purposes of Plaintiffs' employment.[56] Therefore, under this language of the Job Order, MPAS had authority

---

[50] *Bonnette*, 704 F.2d at 1470.

[51] Complaint ¶¶ 8, 18.

[52] *Id.* ¶ 19.

[53] *Id.* ¶ 16.

[54] Job Order at 23.

[55] *Id.* at 23, 27.

[56] Motion to Dismiss at 7-8.

to fire Plaintiffs. Additionally, the self-serving fact that MPAS identified itself as an "employer agent" when filling out the Job Order[57] does not overcome Plaintiffs' allegations that MPAS was a joint employer under the standard of review on a Rule 12(b)(6) motion.

The facts Plaintiffs allege, coupled with the language of the Job Order, are sufficient to create a reasonable inference that MPAS had the power to hire and fire Plaintiffs.

### MPAS controlled Plaintiffs' conditions of employment

The second factor in determining whether a joint employer relationship exists under the *Bonnette* test is whether the alleged joint employer supervised or controlled employee work schedules or conditions of employment.[58] Plaintiffs allege "MPAS sets many of the terms of the sheepherders' employment[.]"[59] Plaintiffs further allege MPAS furnished specific terms of employment for Plaintiffs in its Job Order, including; job description, length and period of employment, wage rates, housing terms, and workers' compensation terms.[60] These allegations, coupled with the language of the Job Order, are sufficient to create a reasonable inference that MPAS controlled the terms and conditions of Plaintiffs' employment at Mr. Stamatakis's ranch. Control may be shown by evidence to be different than stating terms of employment, but at this stage the allegations are sufficient.

### MPAS determined Plaintiffs' rate and method of payment

The third factor in *Bonnette*'s joint employer test is whether the alleged joint employer determined the employee's rate and method of payment.[61] Plaintiffs allege MPAS controlled the

---

[57] Job Order at 23.

[58] *Bonnette*, 704 F.2d at 1470.

[59] Complaint ¶ 19; Job Order at 24-28.

[60] Complaint ¶25; Job Order at 24-28.

[61] *Bonnette*, 704 F.2d at 1470.

terms of Plaintiffs' employment, including wage rates and frequency of pay.[62] Specifically, Plaintiffs allege MPAS determined that Plaintiffs would be paid $750 per month from 2012-2015 plus room and board, and $1,206.31 per month in 2016 plus room and board, and would be paid twice monthly.[63] In addition, the Job Order states that the following deductions may be taken from Plaintiffs' pay: "FICA (if applicable); loans and advances (if any); long-distance telephone charges (if any); the reasonable repair or replacement cost of willful or negligent damage to housing, tools and equipment caused by the work (other than normal wear and tear)."[64]

The facts Plaintiffs allege, coupled with the language of the Job Order, are sufficient to create a reasonable inference that MPAS determined Plaintiffs' rate and method of payment while working at Mr. Stamatakis's ranch.

### *Plaintiffs lack of allegations that MPAS maintained their employment records is inconsequential*

The final factor in the *Bonnette* test is whether the alleged joint employer maintained the employee's employment records.[65] Though Plaintiffs do not allege MPAS maintained their employment records, this factor is not dispositive in determining whether or not a joint employer relationship existed.[66]

Looking at the "circumstances of the whole activity,"[67] Plaintiffs allege sufficient facts to create a reasonable inference that MPAS "exercised considerable control over the nature and structure of the employment relationship."[68] The fact that Mr. Stamatakis may have been in

---

[62] Complaint ¶ 25; Job Order at 24, 26-27.

[63] Complaint ¶ 42; Job Order at 24, 26-27.

[64] Job Order at 27.

[65] *Bonnette*, 704 F.2d at 1470.

[66] *Id*. at 1469.

[67] *Id.*

[68] *Id.* at 1470.

charge of the day-to-day supervision of Plaintiffs is merely consistent with the concept of MPAS and Mr. Stamatakis having differing roles as Plaintiffs' joint employers.[69]

Plaintiffs have sufficiently alleged that MPAS was their joint employer with Mr. Stamatakis under either the Fourth Circuit test or the Ninth Circuit test.[70] Plaintiffs have also alleged that MPAS and Mr. Stamatakis failed to pay them at least a minimum wage for work that involved interstate commerce in violation of the FLSA.[71] These allegations are sufficient to state a plausible claim against MPAS for violation of the FLSA.

### Plaintiffs allege sufficient facts to state a plausible TVPRA claim

Pursuant to 18 U.S.C. § 1595(a), any person who is a victim of a violation of the TVPRA, "may bring a civil action against the perpetrator (or whoever knowingly benefit[ted])" from the violation.[72] A violation of § 1589(a) of the TVPRA occurs when a person:

> knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means--
>
> > (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> >
> > (2) by means of serious harm or threats of serious harm to that person or another person;
> >
> > (3) by means of the abuse or threatened abuse of law or legal process; or
> >
> > (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint[.][73]

---

[69] *Id.* ("The 'economic reality' was that the appellants employed the chore workers to perform social services for the benefit of the recipients. The fact that the appellants delegated to the recipients various responsibilities does not alter this; it merely makes them joint employers.")

[70] Complaint ¶¶ 8, 16, 18-20, 25, 42, 84; Job Order at 23-29.

[71] Complaint ¶¶ 23-24, 42, 71-72, 84.

[72] 18 U.S.C. § 1595(a).

[73] *Id.* § 1589(a).

A violation of § 1589(b) of the TVPRA occurs when a person:

> knowingly benefits, financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means[.][74]

And a violation of § 1592(a) of the TVPRA occurs when a person:

> knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person--
>
> > (1) in the course of a violation of section 1581, 1583, 1584, 1589, 1590, 1591, or 1594(a);
> >
> > (2) with intent to violate section 1581, 1583, 1584, 1589, 1590, or 1591; or
> >
> > (3) to prevent or restrict or to attempt to prevent or restrict, without lawful authority, the person's liberty to move or travel, in order to maintain the labor or services of that person, when the person is or has been a victim of a severe form of trafficking in persons, as defined in section 103 of the Trafficking Victims Protection Act of 2000[.][75]

MPAS argues that Plaintiffs fail to allege sufficient facts to show: (1) MPAS obtained Plaintiff's labor in violation of § 1589(a); (2) MPAS "knowingly or in reckless disregard of the facts participated in a venture to obtain labor" in violation of § 1589(b); and (3) MPAS confiscated Plaintiffs' immigration documents in violation of § 1592(a).[76]

Plaintiffs have sufficiently alleged that MPAS was their joint employer with Mr. Stamatakis.[77] Plaintiffs also allege MPAS refused to provide Plaintiffs with their visa renewals when Plaintiffs asked for them; concealed Mr. Stamatakis's conduct by referring Plaintiffs' questions and complaints back to Mr. Stamatakis; and threatened Plaintiffs' with deportation if

---

[74] *Id*. § 1589(b).

[75] *Id*. § 1592(a).

[76] Motion to Dismiss at 12.

[77] Complaint ¶¶ 8, 16, 18-20, 25, 42, 84; Job Order at 23-29; *see also supra* at 7-13.

they complained through an attorney.[78] MPAS argues this cannot plausibly be considered a threat,[79] but Plaintiffs sufficiently allege MPAS had control over their future in the United States,[80] so MPAS's alleged conduct may reasonably be interpreted as a threat and coercive. Therefore, Plaintiffs have sufficiently alleged MPAS knowingly obtained Plaintiffs' labor in violation of § 1589(a).

Additionally, Plaintiffs allege MPAS had knowledge of the abuses they allege based on Plaintiffs having reported the abuses to MPAS.[81] This allegation, coupled with the allegation that MPAS "always referred employees back to Stamatakis whenever complaints arose,"[82] create a reasonable inference that MPAS was participating in a venture with Mr. Stamatakis in violation of § 1589(a). Plaintiffs further allege MPAS benefitted from this venture because MPAS financially benefits from the success of its member ranches.[83] Therefore, Plaintiffs have sufficiently alleged MPAS violated § 1589(b).

Similarly, because Plaintiffs allege they informed MPAS that Mr. Stamatakis had confiscated their immigration documents and MPAS did nothing about it,[84] Plaintiffs have sufficiently alleged that MPAS, working in concert with Mr. Stamatakis, knowingly confiscated Plaintiffs' immigration documents in violation of § 1592(a).

---

[78] Complaint ¶¶ 51-52, 57.

[79] Defendant Mountain Plains Agricultural Service's Reply to Plaintiff's Opposition to Motion to Dismiss ("Reply") at 9, docket no. 30, filed Aug. 25, 2017.

[80] Complaint ¶¶ 16-20, 51-52, 57.

[81] *Id*. ¶¶ 52, 57.

[82] *Id*.

[83] *Id*. ¶¶ 7-8, 21-22.

[84] *Id*. ¶¶ 52, 57.

**Plaintiffs allege sufficient facts to state a plausible claim for breach of contract**

The elements for a breach of contract claim under Utah law are: "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[85]

MPAS argues, similar to its arguments against Plaintiffs' FLSA claim, that it is not Plaintiffs' employer, and therefore could not have entered a contract with Plaintiffs.[86] However, Plaintiffs have sufficiently alleged that MPAS was their joint employer with Mr. Stamatakis.[87] Plaintiffs also allege the existence of a contract with MPAS based on their Job Order.[88] The Job Order includes the terms and condition of Plaintiffs employment, which Plaintiffs allege MPAS established.[89] And DOL regulations state that "[i]n the absence of a separate, written work contract . . . the required terms of the job order and the certified Application for Temporary Employment Certification will be the work contract."[90] Additionally, Plaintiffs allege MPAS and Mr. Stamatakis jointly filed Plaintiffs' H-2A visa applications.[91] Therefore, Plaintiffs have sufficiently alleged the existence of a contract with MPAS.

Plaintiffs also allege they performed on the contract by working at Mr. Stamatakis's ranch.[92] Plaintiffs further allege that MPAS, along with Mr. Stamatakis, breached the contract by failing to abide by the terms of the Job Order, including: not providing adequate housing;

---

[85] *America West Bank Members, L.C. v. State*, 342 P.3d 224, 230-31 (Utah 2014).

[86] Motion to Dismiss at 10.

[87] Complaint ¶¶ 8, 16, 18-20, 25, 42, 84; Job Order at 23-29; *see also supra* at 7-13.

[88] Complaint ¶¶ 23-29, 94-95.

[89] Job Order at 23-28.

[90] 20 C.F.R. § 655.122(q).

[91] Complaint ¶ 16.

[92] Complaint ¶¶ 30-39, 96.

withholding wages; and not providing sufficient food and water.[93] And Plaintiffs allege they incurred damages as a result of these breaches.[94]

These allegations are sufficient to state a plausible claim for breach of contract against MPAS.

### Plaintiffs allege sufficient facts to state a plausible claim for quantum meruit

Under Utah law, parties may raise alternative theories of breach of contract and the equitable claim of quantum meruit.[95] "The parties' freedom at the pleading stage applies regardless of the pleaded claims' consistency or the fact that some claims are based on legal grounds and others on equitable grounds."[96] Therefore, the fact that Plaintiffs have asserted a claim for breach of contract does not preclude their pleading a claim for quantum meruit.

"Quantum meruit is an equitable tool that allows a plaintiff to receive restitution for the reasonable value of services provided to the defendant."[97] Under Utah law, to plead a claim for quantum meruit, "the plaintiff must establish that the defendant (1) received a benefit, (2) appreciated or had knowledge of this benefit, and (3) retained the benefit under circumstances that would make it unjust for the defendant to do so."[98]

---

[93] *Id.* ¶¶ 25-26, 40-43, 64-67, 71-73, 76, 97.

[94] *Id.* ¶¶ 98-99.

[95] *Northgate Vill. Dev., LC v. Orem City*, 325 P.3d 123, 133 (Utah Ct. App. 2014).

[96] *Id.*

[97] *Express Recovery Servs. Inc. v. Reuling*, 364 P.3d 766, 770 (Utah Ct. App. 2015) (internal quotations omitted).

[98] *Id.* (internal quotations omitted).

MPAS argues that Plaintiffs fail to allege facts that show MPAS directly benefitted from Plaintiffs' work.[99] Plaintiffs argue that MPAS's purpose is to provide H-2A workers to its members, and that MPAS benefits when its member ranches benefit from the workers' labor.[100]

In *Emergency Physicians Integrated Care v. Salt Lake County*, the Utah Supreme Court stated "it is not an element of quantum meruit that the benefit run exclusively to the party from which compensation is sought."[101] The Utah Supreme Court analyzed whether plaintiff physicians could recover from Salt Lake County under quantum meruit for medical services it provided to county inmates.[102] The Utah Supreme Court recognized that though the inmates received the "physical benefit," the "County also benefitted from [plaintiff's] service" because the County was not a passive third party and had control over where and when the benefit was conferred.[103]

Plaintiffs allege MPAS had control over the recruiting of H-2A workers and sets the terms of the employment, including contractual periods and wage rates.[104] Plaintiffs also allege MPAS acted as an enterprise with Mr. Stamatakis "whose annual revenue is above $500,000[.]"[105] The fact that Mr. Stamatakis received the direct benefit of Plaintiffs' work at his ranch does not mean that, as an alleged joint employer, MPAS did not receive "real benefits that are sufficient to establish the first prong of a quantum meruit claim."[106] Therefore, Plaintiffs

---

[99] Motion to Dismiss at 11.

[100] Memorandum in Opposition to Defendant Mountain Plains Agricultural Services Motion to Dismiss ("Opposition") at 17, docket no. 29, filed Aug. 11, 2017; *see also* Complaint ¶¶ 21-22.

[101] 167 P.3d 1080, 1085 (Utah 2007).

[102] *Id.* at 1086.

[103] *Id.*

[104] Complaint ¶¶ 18-19, 25, 42; Job Order 23-28.

[105] Complaint ¶ 22.

[106] *Emergency Physicians Integrated Care*, 167 P.3d at 1086.

have sufficiently alleged MPAS received a benefit from Plaintiffs' work at Mr. Stamatakis's

ranch.

It is also reasonable to infer from Plaintiffs' allegations that MPAS had knowledge of this

benefit. Otherwise, MPAS would have no incentive to recruit and hire H-2A workers for its

member ranches. Additionally, Plaintiffs sufficiently allege that MPAS's retention of the benefit

without adequate remuneration would be unjust.[107] Indeed, Plaintiffs allege they were rarely paid

for their work as sheepherders, as well as for their non-sheepherding work.[108]

Therefore, Plaintiffs allege sufficient facts to state a plausible claim or quantum meruit

against MPAS.

### Plaintiffs allege sufficient facts to state a plausible claim for intentional infliction of emotional distress

To assert a claim for intentional infliction of emotional distress under Utah law, a

plaintiff must allege facts showing the following elements: "(1) outrageous conduct by the

defendant; (2) the defendant's intent to cause, or the reckless disregard of the probability of

causing, emotional distress; (3) severe emotional distress; and (4) an actual and proximate causal

link between the tortious conduct and the emotional distress."[109]

Plaintiffs allege that when they complained to MPAS about Mr. Stamatakis's abuses,

MPAS threatened them with possible deportation if they raised the issue through an attorney.[110]

MPAS argues it was simply informing Plaintiffs of a fact and that Plaintiffs are adding "gloss" to

convert this fact into a threat.[111] However, MPAS provides no citation to authority stating

---

[107] Complaint ¶¶ 42, 71-72.

[108] *Id.* ¶¶ 39, 42.

[109] *White v. Blackburn*, 787 P.2d 1315, 1317 (Utah Ct. App. 1990).

[110] Complaint ¶ 57.

[111] Reply at 9.

Plaintiffs could be deported for complaining through an attorney. MPAS's argument also does not to account for Plaintiffs allegations that MPAS, as a joint employer with Mr. Stamatakis, had control over Plaintiffs' future in the United States,[112] and that MPAS refused to provide Plaintiffs with their visa renewals when Plaintiffs asked for them and concealed Mr. Stamatakis's conduct by referring Plaintiffs' questions and complaints back to Mr. Stamatakis.[113]

Only an employer, and not a foreign worker, has the ability to file applications for H-2A visas.[114] Thus, Plaintiffs would not be authorized to stay in the United States if MPAS and Mr. Stamatakis refused to renew Plaintiffs' visas in retaliation for Plaintiffs seeking out an attorney, as is reasonably inferred from Plaintiffs' allegations. Therefore, depending on what was said and how it was said to Plaintiffs, MPAS's statement may reasonably be viewed as a threat.

Additionally, Plaintiffs allege sufficient facts to reasonably infer that the threat of deportation was outrageous, and that it was given in order to force Plaintiffs' compliance through coercion, and was either intentional or made in reckless disregard of causing emotional distress to Plaintiffs.[115] Plaintiffs further allege they suffered emotional distress "as a result of having their requests for help denied," and that this was "a form of psychological harm[.]"[116]

Therefore, Plaintiffs allege sufficient facts to state a plausible claim for intentional infliction of emotional distress against MPAS.

---

[112] Complaint ¶¶ 16-20, 51-52, 57.

[113] Complaint ¶¶ 51-52, 57.

[114] 20 C.F.R. § 655.132.

[115] Complaint ¶¶ 16-20, 51-52, 57.

[116] *Id.* ¶ 62

**Plaintiffs allege sufficient facts to state a plausible claim for**
**negligent infliction of emotional distress**

In the alternative, Plaintiffs allege a claim for negligent infliction of emotional distress under Utah law.[117] This claim requires a plaintiff to plead the elements found in § 313 of the Restatement (Second) of Torts (1965), which states:

> (1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting illness or bodily harm if the actor
>
> > (a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and
> >
> > (b) from facts known to him should have realized that the distress, if it were caused, might result in illness or bodily harm.[118]

MPAS again argues that Plaintiffs have failed to state a claim because its statement to Plaintiffs about deportation cannot be interpreted as a threat.[119] However, taking Plaintiffs' allegations as true and affording Plaintiffs all reasonable inferences, Plaintiffs have sufficiently alleged MPAS either knew or should have known that a threat of deportation in response to a complaint could cause Plaintiffs emotional distress.[120]

Therefore, Plaintiffs allege sufficient facts to state a plausible claim for negligent infliction of emotional distress against MPAS.

---

[117] *Id.* ¶¶ 106-110.

[118] *White*, 787 P.2d at 1318 (quoting Restatement (Second) of Torts § 313 (1965)).

[119] Motion to Dismiss at 12.

[120] Complaint ¶¶ 16-20, 51-52, 57, 62; s*ee also supra* at 19-20.

**ORDER**

IT IS HEREBY ORDERED that MPAS's Motion to Dismiss[121] is DENIED.

Signed December 6, 2017.

BY THE COURT

District Judge David Nuffer

---

[121] Docket no. 22, filed July 17, 2017.